UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NEUROLOGICAL SURGERY, P.C.,

                   Plaintiff,              **MEMORANDUM AND ORDER**

 - against -                   2:19-cv-4817 (DRH) (ARL)

AETNA HEALTH INC. and AETNA HEALTH
INSURANCE COMPANY OF NEW YORK,

                  Defendants.
----------------------------------------------------------------X

**APPEARANCES**

**GARFUNKEL WILD, P.C.**
Attorneys for Plaintiff
111 Great Neck Road
Great Neck, NY 11021
By:    Roy W. Breitenbach, Esq.
        Colleen M. Tarpey, Esq.
        Marc A. Sittenreich, Esq.

**FOX ROTHSCHILD LLP**
Attorneys for Defendants
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422
By:    Jordann R. Conaboy, Esq.

**ELLIOT GREENLEAF P.C.**
Attorneys for Defendants
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
By:    Gregory R. Voshell, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

       Plaintiff Neurological Surgery P.C. ("Plaintiff") brought this action against

Defendants Aetna Health Inc. and Aetna Health Insurance Company of New York

(collectively "Aetna" or "Defendants") seeking payment, pursuant to the Employee

Retirement Income Security Act ("ERISA") and New York state law, for 200 medical claims for services performed on Aetna health plan members[1] alleging that Aetna has either underpaid or denied full payment on these claims.  The claims[2] arise from medically necessary, complex procedures occurring over a four-year span (2012–2016) and implicating 145 different Aetna health plans.  Presently before the Court is Aetna's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  [DE 21].  For the reasons set forth below, Aetna's motion is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

Plaintiff is the largest private neurosurgery practice on Long Island and in the New York tri-state area.  (Compl. ¶ 1).  As a healthcare provider, Plaintiff treats patients with "complex, often emergent, neurological conditions requiring neurosurgical procedures and treatment."  (*Id.* ¶ 15).  These patients often have health insurance coverage with, or are members of, group health plans sponsored or administered by Aetna.  (*Id.* ¶ 17).

Aetna is a health insurance company that creates "provider networks": a group of providers whom Aetna reimburses at pre-determined, contractual rates for services performed for Aetna members.  (*Id.* ¶ 5).  A provider in a "provider network" is "in-

---

[1]    The term "members" refers to individuals covered by fully-insured and self-funded Aetna health plans, including any such members, subscribers, or beneficiaries.  (*See* Compl. ¶¶ 1, 19, 46).

[2]    For the purposes of this Memorandum and Order, the term "claim" is not used synonymously with "cause of action," unless used in that manner in a quotation.

network"; otherwise, a provider is "out-of-network." (*Id.* ¶¶ 5–6). Aetna members may obtain treatment from out-of-network providers. (*Id.* ¶¶ 7, 19). When they do, however, Aetna reimburses at "the usual, customary, and reasonable charges for the services rendered, less any co-payment, co-insurance, member out-of-pocket, or deductible amounts" – the "UCR Rate." (*Id.* ¶¶ 8, 20). The precise reimbursement methodology is set out in each member's plan. (*Id.* ¶ 20).

Plaintiff is out-of-network with Aetna. (*Id.* ¶¶ 9, 23). Before Plaintiff performs medically necessary, complex procedures for Aetna members, the members authorize and assign Plaintiff their rights to receive payment directly from Aetna. (*Id.*). They do so, for example, by executing "assignment of benefits" forms. (*Id.* ¶ 24). With these authorizations and assignments, Plaintiff "engage[s Aetna] in communications or discussions" in order to open a "claim" for reimbursement at the rates in each Aetna member-patient's "applicable health plan." (*Id.* ¶¶ 25, 29, 31–33, 40). Aetna has allegedly failed to pay or, after delay, underpaid on 200 claims between 2012 and 2016. (*Id.* ¶¶ 37–39; *see, e.g.*, *id.* ¶¶ 44–2365). Plaintiff's attempts to collect any outstanding amounts fell "on deaf ears" and yielded "vague letters and promises of proper payment at some uncertain point in the future." (*Id.* ¶¶ 40–41).

The Complaint sets out the details of each claim in the following pattern: (i) the Aetna member's initials; (ii) the date of service; (iii) whether the services were emergency or elective, (iv) the nature of the services (*i.e.*, the diagnosis and procedure, generally); (v) the date on which the member assigned to Plaintiff all rights to receive reimbursement from Aetna for the services provided; (vi) the date on

which Plaintiff first billed Aetna, and the amount of the bill; (vii) the dates on which Plaintiff "communicated" with Aetna, if any; (viii) whether or not Aetna reimbursed Plaintiff, and the amount of reimbursement, if any; (ix) "the reimbursement methodology that Aetna should have applied in accordance with the terms of the applicable plan"; and (x) the dates and outcome of "additional, written appeals" to Aetna seeking further reimbursement, if any.  (Compl. ¶¶ 44–2365; *see* Pl. Opp. at 4 [DE 23]).  The abundance of details prevents the Court from reciting the particulars succinctly in the body of this Order, though they are important for the analysis below. Instead, the spreadsheet at Appendix A lays out each claim's pertinent facts.[3]

A few observations about the claims are worthy of note.  Though Aetna members assigned their reimbursement rights for 198 of the 200 claims, Plaintiff does not reveal the terms of each assignment or attach the assignment contracts themselves.  (Compl. ¶¶ 401–09, 491–503 (failing to allege assignment)).  Plaintiff identifies a reimbursement methodology for most—but not all—of the claims. (*Compare id.* ¶¶ 53, 65, 77 (detailed methodologies)*, with id.* ¶¶ 390–400, 401–09 (no methodology given)).  A claim's reimbursement methodology is the only instance where Plaintiff relays the terms of the health plan at issue on that claim.  While Plaintiff styles its communications with Aetna as "appeals . . . for additional payment" in which Aetna "[r]ecogniz[ed] [Plaintiff's] status as an assigned beneficiary," Plaintiff never specifies the context and content of these "numerous" communications.

---

[3]     As they have minimal bearing on the Court's analysis, Appendix A does not devote columns to the information in (iii), (iv), and (v).

(*E.g.*, *id.* ¶¶ 51, 63).  Plaintiff likewise omits the context and content of its "additional, written appeal[s]."  (*E.g.*, *id.* ¶¶ 102, 114).

## II.   Procedural Background

Plaintiff originated this action in late July 2019 in Nassau County Supreme Court of the State of New York.[4]  (Notice of Removal at 1 [DE 1]).  Defendants removed this action to federal court on August 22, 2019.  (*Id.*).  Plaintiff filed its Complaint on August 30, 2019.  [DE 5].  Plaintiff brings eight causes of action: (1) recovery of benefits due under an employee benefit plan, enforcement rights under the plan, and clarification of rights and future benefits under the plan, pursuant to ERISA, 29 U.S.C. § 1132; (2) an award of reasonable attorneys' fees and costs pursuant to ERISA, 29 U.S.C. § 1132(g)(1); (3) breach of contract; (4) breach of implied-in-fact contract;  (5) unjust enrichment;  (6) tortious interference with contract; (7) violation of the New York Prompt Pay Law, N.Y. Ins. Law § 3224-a; and (8) breach of third-party beneficiary contract.  (Compl. ¶¶ 2366–432).  The first two, as ERISA-based causes of action, are governed by federal law; the rest are governed by New York state law.

---

[4]     Defendants allege Plaintiff's present suit is the third time it brings an action "over the same subject matter."  (Def. Mem. at 3).  The first was *Neurological Surgery, P.C. v. Aetna Health Inc.*, No. 16-4524 (E.D.N.Y. 2016), voluntarily dismissed without prejudice via notice pursuant to a Federal Rule of Civil Procedure 41(a)(1)(A)(i).  That action was commenced in state court via a summons with notice and then removed. No complaint was filed in that matter.  The second was *Neurological Surgery, P.C. v. Aetna Health Inc.*, No. 18-2167 (E.D.N.Y. 2018), voluntarily dismissed without prejudice via stipulation pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Its docket includes the complaint at Exhibit D to the Notice of Removal.

Defendants moved to dismiss on December 6, 2019 on nine grounds.  First, several claims trigger ERISA preemption, requiring dismissal of those claims' state law causes of action.  (Def. Mem. at 9–12 [DE 21-2]).  Second, Plaintiff failed to exhaust administrative remedies for its ERISA-governed claims.  (*Id.* at 12–17).  Third, many ERISA-governed claims involve health plans with anti-assignment provisions and/or expired limitations periods, depriving Plaintiff of standing and rendering the action as to those claims untimely.  (*Id.* at 18–25).  The fourth through ninth grounds address the merits of Plaintiff's state law causes of action.  (*Id.* at 25–34).

Plaintiff opposes.  First, ERISA does not preempt any claims partially-paid by Aetna.  (Pl. Opp. at 6–8).  Second, a valid anti-assignment provision or time limitation bars ERISA from preempting state law causes of action.  (*Id.* at 9–14).  Third, exhaustion of administrative remedies is an affirmative defense and not required in Plaintiff's pleading, and any further measures would have been futile regardless.  (*Id.* at 14–18).  Fourth, dismissal is premature where discovery may show that Defendant failed to notify Plaintiff and Aetna members of a time limitation to file suit.  (*Id.* at 18–21).  Fifth, Aetna waived its anti-assignment and time limitation by accepting claims from, and paying, Plaintiff.  (*Id.* at 21–22).  Plaintiff further argues that the Complaint adequately pleads its state law causes of action.  (*Id.* at 23–35).

Plaintiff concludes by requesting leave to amend its Complaint should the Court agree with Defendants.  (Pl. Opp. at 35).  Defendants ask this Court to deny

leave due to Plaintiff's repeatedly-filed "substantively-identical complaints."  (Def.

Reply at 15 [DE 24]; *see supra* note 4).

## DISCUSSION

The legal analysis will occur in the following order:  In Section I, the Court

identifies the legal standards.  In Section II, the Court determines whether it can

consider the health plan exhibits, and highlights certain plans that are inconclusively

labeled (*see* Appendix B) or mislabeled (*see* Appendix C) with respect to whether

ERISA applies.  In Section III, the non-ERISA claims are analyzed.  (*See* Appendix

D).  In Section IV, the Court addresses the unassigned ERISA claims.  (*See* Appendix

E).  In Section V, the various anti-assignment provisions in the ERISA plans are

interpreted.  (*See* Appendix F).  In Section VI, the ERISA preemption analysis is

performed.  (*See* Appendix G).  In Section VII, the Court determines whether Plaintiff

exhausted administrative remedies before bringing suit.  (*See* Appendix G).  In

Section VIII, the Court concludes with Plaintiff's request for leave to amend the

Complaint.

## I.      Legal Standards

### A.      Rule 12(b)(6) Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-

pleaded factual allegations to be true, and determine whether they plausibly give rise

to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.

2011) (internal quotation marks omitted).  The plausibility standard is guided by two

principles.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions.  Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss.  *Iqbal,* 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  Determining whether a complaint plausibly states a claim for relief

is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

### B.    Materials Considered on a Rule 12(b)(6) Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court is generally limited to the complaint and documents attached thereto. *See* Fed. R. Civ. P. 12(d); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013).   A court "'may also consider matters of which judicial notice may be taken.'"  *Apotex Inc. v. Acorda Therapeutics, Inc.* 823 F.3d 51, 60 (2d Cir. 2016) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see Bristol v. Nassau County*, 2016 WL 2760339 (E.D.N.Y. May 12, 2016) ("On a motion to dismiss, consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." (internal quotation marks omitted)).

## II.    The Health Plan Exhibits

Absent from the Complaint is any method to decipher which, and how many, claims involve ERISA-governed employee benefit plans – beyond the allegation that "[s]ome," indeed, do.  (Compl. ¶ 2367).  Defendants attach every health plan—145 in

total—implicated by the claims in the Complaint.[5]  (*See* Exs. 1–145, Aff. of Elizabeth Petrozelli ("Petrozelli Aff.") [DE 21-4];[6] *see also* Appendix A to this Order). Defendants' Exhibit A to their Opening brief lists whether a plan is governed by ERISA or not.  There is no explanation for Defendants' ERISA or non-ERISA label, but Plaintiff's submissions thus far do not dispute their accuracy.  (*See* Pl. Opp. at 5 n.1, 9–10).

## A.   Consideration of the Health Plans

At the outset, the Court must determine whether it can consider these exhibits on the motion to dismiss.  Plaintiff does not contest the Court's consideration of the health plans.  And Defendants state they provided Plaintiff with copies in exchange for the dismissal of *Neurological Surgery, P.C. v. Aetna Health Inc.*, No. 18-2167 (E.D.N.Y. 2018).  (*See* Def Mem. at 5).

Courts routinely consider the health plans on motions to dismiss in similar cases.  *E.g.*, *Neurological Surgery, P.C. v. Travelers Co.* ("*Travelers*"), 243 F. Supp. 3d 318, 325 (E.D.N.Y. 2017) ("When deciding a motion to dismiss, a court may consider . . . ERISA plan documents."); *Neurological Surgery, P.C. v. Northrup Grumman Sys.* ("*Northrup Grumman*"), 2017 WL 389098, at *5 (E.D.N.Y. Jan. 26, 2017).  In *Neurological Surgery, P.C. v. Siemens Corp.* ("*Siemens*"), the Court considered a health plan because, in part, ERISA plaintiffs "had to exhaust all

---

[5]    Every claim implicates a health plan.  Two or more claims may implicate the same plan, but no one claim implicates more than one plan.

[6]    Unless otherwise noted, any citation to "Ex. #" refers to the exhibits in the Affidavit of Elizabeth Petrozelli [DE 21-4].

administrative remedies outlined in the [p]lan whether or not they were aware of such remedies before bringing suit." 2017 WL 6397737, at *7 (E.D.N.Y. Dec. 12, 2017). In *Steger v. Delta Airlines*, the plaintiff did not attach the applicable ERISA plan to the complaint, but the defendants "annexed a copy . . . to [the] motion to dismiss." 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005). The *Steger* Court considered the plan because it was "directly referenced in the complaint and is the basis of this action." *Id.*

The Complaint here specifies each plan's precise reimbursement methodology for most claims, though the methodologies are pled "upon information and belief." (*See, e.g.*, Compl. ¶¶ 53, 65, 77, 100–01, 137, 698, 1361, 1428, 1566). Plaintiff's brief admits by way of example that certain claims are governed by the plans at Exhibits 63 and 84. (*E.g.*, Pl. Opp. at 8; *see* Exs. 63, 84 [DE 22-13, 22-34]). Plaintiff also relies on plan terms in formulating arguments in opposition. (Pl. Opp. at 24 (quoting the language of the various anti-assignment provisions in the health plans at issue)).

For the reasons expressed in *Travelers*, *Northrup Grumman*, *Siemens*, and *Steger*, the 145 health plans at issue are properly considered on this motion to dismiss. *See* Exs. 1–145. The exhibited plans form the basis of the action: Each plan's reimbursement methodology enabled Plaintiff to determine whether, and to what extent, Aetna allegedly owes payment.

In reviewing certain exhibits, however, the Court notes that some contradict or fail to confirm Defendants' ERISA or non-ERISA label. The Court now turns to the inconclusive and mislabeled plans.

## B.    Inconclusive Plans[7]

There are 3 exhibits Defendants label "non-ERISA" that do not provide a basis to determine whether or not the plan is subject to ERISA.  Exhibit 33 is labeled a non-ERISA plan, but the one-page slipsheet Defendants provided states "Aetna has no plan document for this claim."  Ex. 33 [DE 21-37].  Defendants do not address why they nevertheless labeled it as a non-ERISA plan.

Exhibit 54 is also labeled a non-ERISA plan.  Upon inspection, Exhibit 54 is a chart labeled "Attachment A," and the document which it appends is not included.  Ex. 54 at 1 [DE 22-4].  The chart purports to identify the benefits available for certain network and out-of-network services.  This chart is not the health plan, and the Court cannot say whether it is governed by ERISA.  Additionally, the word "Aetna" does not appear in the document.  *See id.*

Exhibit 95 is also labeled a non-ERISA plan, but the one-page slipsheet Defendants provided states "Aetna has no plan document for this claim."  Ex. 95 [DE 22-45].  Defendants do not address why they nevertheless labeled it as a non-ERISA plan.

Without a basis to say whether or not the health plans are subject to ERISA, the 4 claims implicating Exhibits 33, 54, and 95 are treated as inconclusive.  The Court retains jurisdiction over such claims until it is clear whether they are subject to ERISA.

---

[7]    Appendix B lists all pertinent information for the claims mentioned in this Inconclusive Plans section.

## C.     Mislabeled Plans[8]

There are 2 "non-ERISA" claims implicating plans which, upon review, suggest they are governed by ERISA.  Exhibit 11 is titled "Extraterritorial Riders," which is a set of provisions that "form[] a part of the booklet certificate issued to [a member] by Aetna describing the benefits provided under the policy," implying that Exhibit 11 is not, in fact, the actual health plan at issue for that claim.  Ex 11 at 1 [DE 21-15]. Moreover, the first page of the Schedule of Benefits states, "This is an ERISA plan, and you have certain rights under this plan."  *Id.* at 134.

In similar fashion, the Schedule of Benefits page in Exhibit 13 also states, "This is an ERISA plan, and you have certain rights under this plan."  Ex. 13 at 102 [DE 21-17].  For the purposes of this Memorandum and Order, and without an argument to treat them as non-ERISA, the 2 claims implicating Exhibits 11 and 13 are thus treated as subject to ERISA.

## III.   Non-ERISA Plans and Standing[9]

The non-ERISA label is correctly applied to 8 plans implicated by 12 claims. Under such plans, Plaintiff (assigned the right to reimbursement) cannot enforce ERISA rights, as the assigning Aetna member is not an ERISA "participant or beneficiary."  *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328–29 (2d Cir. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)).  With no ERISA causes of action, only

---

[8]     Appendix C lists all pertinent information for the claims mentioned in this Mislabeled Plans section.

[9]     Appendix D lists all pertinent information for the claims mentioned in this Non-ERISA Plans section.

state law causes of action remain; no federal question jurisdiction pursuant to 28 U.S.C. § 1331 exists.  There is no diversity jurisdiction pursuant to 28 U.S.C. § 1332 because all parties hail from New York.  (Compl. ¶¶ 13–15).

Plaintiff therefore asks the Court to exercise supplemental jurisdiction over these claims.  28 U.S.C. § 1367(a); *see* Pl. Opp. at 5 n.1, 11 n.2.  District courts have "supplemental jurisdiction over all the claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Thus supplemental jurisdiction exists if the Court has subject-matter jurisdiction over other claims and if the federal and state claims stem from a "common nucleus of operative fact."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Plaintiff alleges the Court's subject-matter jurisdiction comes from its "multiple viable ERISA claims."  (Pl. Opp. at 11 n.2).  Yet the Court's analysis below reveals that there may not be any viable claims in federal court,[10] meaning there is no original jurisdiction to affix supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a).

Even if certain claims remained in federal court, however, it is arguable whether the 12 non-ERISA claims stem from the same "common nucleus of operative fact" as any of the 184 ERISA claims.  A similar legal theory undergirds all claims: Aetna allegedly underpaid or failed to pay Plaintiff for services performed for Aetna

---

[10]     The Court retains jurisdiction over the 4 claims implicating Exhibits 33, 54, and 95 to determine whether these are, in fact, ERISA-governed claims for which Plaintiff has statutory standing.  (*See* Compl. ¶¶ 538–48, 549–60, 853–62, 1431–41).  If not, then such claims must be remanded to state court.

members.  *See Montefiore Med. Ctr.*, 642 F.3d at 323–333 (citing *Brunswick Surgical Ctr., LLC v. CIGNA Healthcare*, 2010 WL 3283541, at *1 (D.N.J. Aug. 18, 2010)).  But practically, there are important differences.  The members are different, their health plans have different terms, their medical procedures were different, the reimbursement methodologies are different, the dates of service and correspondence were different, and some but not all involve "additional, written appeals."

A court "may decline to exercise supplemental jurisdiction" if "in exceptional circumstances, there are compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).  Compelling reasons to decline exist here.  Plaintiff's 400-page Complaint details 200 total claims: 4 inconclusive, 12 non-ERISA, and 184 ERISA.  There are 145 implicated health plans: 3 inconclusive, 8 non-ERISA, and 134 ERISA – and no indication that any non-ERISA plans are "substantially identical" to any ERISA ones. By way of contrast: the *Brunswick Surgical* Court exercised supplemental jurisdiction over claims relating to 5 non-ERISA plans, where those 5 were among 12 "substantially identical" plans, in a case with 13 total plans.  2010 WL 3283541, at *1.

Without supplemental jurisdiction, all causes of action related to the 12 non-ERISA claims are remanded to New York state court.

## IV.   The Unassigned Claims[11]

For 2 ERISA claims, Plaintiff fails to allege that the Aetna members assigned their rights to receive reimbursement for the health care services provided.  (Compl. ¶¶ 401–09, 491–503).  Plaintiff nevertheless asserts ERISA "cause[s] of action as an assignee" of these two Aetna members.  (*Id.* ¶¶ 401–09, 491–503, 2376; *see* Exs. 25, 30 [DE 21-29, DE 21-34]).

The ERISA statute is "narrowly construed" to permit only ERISA enumerated parties—"participant[s] or beneficiar[ies]"—to enforce their right to reimbursement. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983); *Montefiore Med. Ctr.*, 642 F.3d at 328–29 (citing 29 U.S.C. § 1132(a)(1)(B)). Plaintiff, a health care provider, is not an enumerated party.  (*See* Compl. ¶¶ 1–3, 9). Without a valid assignment of this right to reimbursement, (*see id.* ¶¶ 9, 23–24, 27, 401–09, 491–503, 2376), Plaintiff has no standing to bring a claim for benefits.  *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177–78 (2d Cir. 2001) ("Simon conceded that he is neither a participant nor beneficiary of the plan under which his benefit claims arise. . . .  Simon is not a healthcare provider assignee.  Accordingly, and for the reasons given by the several circuit courts, we conclude that Simon does not have standing to sue under the terms of ERISA.").

---

[11]   Appendix E lists all pertinent information for the claims mentioned in this Unassigned Claims section.

Plaintiff's ERISA causes of action for these 2 claims are dismissed. To the extent any state law causes of action survive, they are remanded to New York state court.

## V.      Anti-Assignment Provisions and Statutory Standing[12]

Plaintiff therefore brings 184 actionable ERISA claims. At play in 111 of them are anti-assignment provisions. (*See* Def. Mem. at 18; Exs. E–G, *id.*). If valid, these provisions would keep Plaintiff from bringing ERISA causes of action based on these claims' plans.

While only an ERISA "participant or beneficiary" may bring a claim for benefits under ERISA, a "narrow exception" exists for "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Montefiore Med. Ctr.*, 642 F.3d at 328–29 (internal quotation marks omitted); *see* 29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges all "Aetna [m]embers at issue have assigned their right to receive benefits under relevant health plans to" Plaintiff. (Compl. ¶ 2376).

Valid anti-assignment provisions render Plaintiff's "acceptance of [the] assignment . . . ineffective—a legal nullity." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.* ("*McCulloch*"), 857 F.3d 141, 147 (2d Cir. 2017); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.* ("*Mbody*"), 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2015) ("If a health insurance plan 'unambiguously prohibits assignment, an attempted assignment will be ineffectual'" (quoting

---

[12]      Appendix F lists all pertinent information for the claims mentioned in this Anti-Assignment Provisions section.

*Neuroaxis Neurological Assocs., P.C. v. Costco Wholesale Co.*, 919 F. Supp. 2d 345,
351–52 (S.D.N.Y. 2013))).   A plaintiff must establish that the ERISA beneficiary
"assigned his right [to reimbursement] in accordance with the terms of the ERISA
plan." *Travelers*, 243 F. Supp. 3d at 326; *see McCulloch*, 857 F.3d at 148 ("[A]bsent a
*valid* assignment of a claim, . . . non-enumerated parties lack statutory standing to
bring suit under ERISA . . . ." (internal quotation marks omitted) (emphasis in
original)); *Mbody*, 2014 WL 4058321, at *3; *Neuroaxis Neurological Assocs., P.C.*, 919
F. Supp. 2d at 351.   Courts "construe ERISA plans according to federal common law
and interpret them in an ordinary and popular sense as would a person of average
intelligence and experience." *Pepe v. Newspaper & Mail Deliveries'-Publishers'
Pension Fund*, 559 F.3d 140, 147 (2d Cir. 2009) (internal quotation marks and citation
omitted).

Plaintiff does not argue that the language in any of the anti-assignment
provisions is ambiguous.   Instead, Plaintiff contends that "[r]egardless of whether o[r]
not the applicable health plans at issue contain anti-assignment clauses, Aetna
accepted and acknowledged the assignment" of benefits by paying or communicating
with Plaintiff and thus "affected a waiver."   (Compl. ¶ 25; Pl. Opp. at 21–22).   To
Plaintiff, any anti-assignment language is thereby "ineffective to bar an assignment
as a matter of law." (*Id.* ¶ 26).

## A.      The Nine Anti-Assignment Provisions

There are nine different anti-assignment provisions across the 86 ERISA plans implicated by the 111 claims.[13]  Each provision is analyzed below.  Minor differences in the wording of two anti-assignment provisions of the same type—like referring to the health plan as a "contract" or a "policy"—do not impact the analysis and are not mentioned.  As a result of the analysis below, 110 claims implicate 85 ERISA plans with valid anti-assignment provisions, which deprives Plaintiff of standing to bring such claims.   Appendix F identifies which claims correspond to which anti-assignment clause.

> Anti-Assignment Provision #1: "Coverage    may    be assigned only with the written consent of Aetna.  To the extent allowed by law, Aetna will not accept an assignment to an out-of-network provider, including . . ."

There are 46 claims that implicate 39 ERISA plans with this anti-assignment provision or a nearly identical one.

In a similar case, the Second Circuit analyzed an anti-assignment provision with the same wording.  *See McCulloch*, 857 F.3d at 144 (quoting the same anti-assignment provision).  The *McCulloch* Court held "[b]ased on the plain language of this provision, [the out-of-network plaintiff's] acceptance of an assignment was ineffective—a legal nullity."  857 F.3d at 147–48.  Under binding Second Circuit precedent, the unambiguous "terms of the [member's] health care plan" prohibit any Aetna member's attempt to assign an out-of-network provider the right to receive

---

[13]      While their briefing is silent on the issue, Defendants' Exhibit B names a tenth anti-assignment provision.  None of Plaintiff's claims implicate a plan with this provision.  (*See* Exs. D, E, G to Def. Mem.).  As such, it is not analyzed.

reimbursement without Aetna's consent. *Id.* Plaintiff never alleges receipt of Aetna's explicit consent to any assignment. Plaintiff therefore has no standing to bring these 46 claims.

> Anti-Assignment Provision #2: "Coverage and your rights under this Aetna medical benefits plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding."

There are 55 claims that implicate 38 ERISA plans with this anti-assignment provision or a nearly identical one.

The Second Circuit has not yet analyzed this provision, but the Third and Ninth Circuits have. The Third Circuit held "[t]here is only one reasonable interpretation of that language, and it is that [the plan member] was prohibited from assigning his rights to benefits payments." *Univ. Spine Ctr. v. Aetna, Inc.* 774 Fed. App'x 60, 63 (3d Cir. 2019). The Ninth Circuit upheld the anti-assignment provision as "valid and enforceable," after a district court held the "prohibition on assigning 'coverage' and '*rights*' constitutes a ban on the assignment of both the right to receive payments *and* other ancillary ERISA rights." *Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, 720 Fed. App'x 862, 863 (9th Cir. 2018), *aff'g* 2016 WL 7637666, at *5 (C.D. Cal. Aug. 30, 2016) (emphasis in original). Though not binding, the analyses are persuasive.

This anti-assignment provision unambiguously prohibits an assignment of "the right to receive benefits under the relevant health plan[]," *i.e.*, the basis for Plaintiff's suit. (Compl. ¶ 2376). Plaintiff therefore has no standing to bring these 55 claims.

> Anti-Assignment Provision #3:  "The Plan is designed to provide benefits exclusively for you and your dependents (under the medical, dental, vision, disability and FSA plans) or your beneficiary (under the life and accident plans).  Therefore, you may not sell, transfer, assign, or otherwise encumber your interest in the Plan except as provided by law or by plan terms."

Only 1 claim implicates an ERISA plan with this anti-assignment provision. Though no federal court has explicitly analyzed this provision, its plain language is clear, definite, and unambiguous.  Because Plaintiff has not identified a "law" or a "plan term[]" triggering an exception, the Aetna member was prohibited from assigning his or her rights to Plaintiff.  As such, the purported assignment is "ineffective" and "a legal nullity," depriving Plaintiff of standing on this claim.  *See McCulloch*, 857 F.3d at 147.

> Anti-Assignment Provision #4:  "The employee may not assign his or her right to take legal action under the contract to such provider."

Only 1 claim implicates an ERISA plan with this anti-assignment provision. Two federal district courts in New Jersey analyzed this provision and found it "clear and unambiguous."  *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, 2020 WL 1983693, at *4 n.7 (D.N.J. Apr. 27, 2020); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield*, 2017 WL 6372238, at *2–3 (D.N.J. Dec. 12, 2017).  "The language . . . prohibits [Plaintiff] from asserting the very claims that [it is] trying to assert through this litigation."  *Somerset Orthopedic Assocs., P.A.*, 2020 WL 1983693, at *4 n.7.

These analyses are persuasive.  This provision may not work to prevent assignments of the right to reimbursement, but it bars Plaintiff from bringing suit

under the ERISA plan for a violation thereof.  That bar suffices to deprive Plaintiff of standing to bring the ERISA causes of action with respect to this claim.  *See Univ. Spine Ctr.*, 2017 WL 6372238, at *2–3.

> Anti-Assignment Provision #5:  "You cannot assign benefits due under this Policy to any person, corporation, or other organization.  Any assignment by You will be void. Assignment means the transfer to another person or to an organization of Your right to the services provided under this Policy.  However, You may request Us to make payment for services directly to Your Provider instead of You."

Only 1 claim implicates an ERISA plan with this anti-assignment provision. A similar anti-assignment provision was analyzed in *Farkas v. Group Health Inc.*, 2019 WL 2235959, at *1, *4 (S.D.N.Y. May 19, 2019).  *Farkas*'s provision differs from the one at bar by virtue of an exception and its triggering condition, both of which are absent here.  *Id.*  The *Farkas* Court held that the anti-assignment provision identical in each was unambiguous.  *Id.* ("As this Court has observed, and the Parties do not dispute, the Plan contains an unambiguous anti-assignment provision.  But that is not the end of the story.  The anti-assignment clause has an exception . . ."); *Farkas v. Group Health Inc.*, 2019 WL 657006 (S.D.N.Y. Feb. 1, 2019) ("It is clear enough that the GHI Plan contains an unambiguous anti-assignment provision.").

The Court agrees that the plain language of the provision is clear, definite, and unambiguous.  As such, the purported assignment is "ineffective" and "a legal nullity."  *See McCulloch*, 857 F.3d at 147.  Plaintiff has no standing on this claim.

> <u>Anti-Assignment Provision #6</u>:  "Coverage may be assigned only with
> the consent of Aetna."

There are 2 claims that implicate 2 ERISA plans with this anti-assignment

provision or a nearly identical one.  Its language unambiguously bars assignment to

Plaintiff, who lacked Aetna's consent.  "The plain meaning . . . is that assignments

are prohibited without the consent of . . . Aetna."  *Neuroaxis Neurosurgical Assocs.,*

*PC*, 919 F. Supp. 2d at 353 n.4, 354; *see E. Coast Aesthetic Surgery, P.C. v.*

*UnitedHealthcare*, 2018 WL 3201798, at *2–3 (D.N.J. June 29, 2018) ("The anti-

assignment clauses here are unambiguous and thus enforceable.  Absent consent,

[p]atients lacked authority to assign Plaintiff or anyone else the right to

reimbursement.").  Plaintiff fails to allege that it received Aetna's explicit consent to

any assignment.  (Compl. ¶¶ 25–26 (alleging waiver)).  As such, the assignments are

ineffective and legal nullities; Plaintiff has no standing to bring these 2 claims.

> <u>Anti-Assignment Provision #7</u>:  "If you choose to designate
> someone else to act on your behalf, you must submit a
> written  designation,  identifying  the  person  who  will
> represent you with respect to the claim.  An 'assignment of
> benefits' on a claim without a separate written designation
> by you does not constitute a valid designation."

Only 1 claim implicates an ERISA plan with this provision.  Whether this

provision can be construed as "anti-assignment provision" is arguable.  First, the

provision at most enables a designated third party to "act on [a member's] behalf."

But when Plaintiff pursues reimbursement from Aetna, it is not "act[ing] on [a

member's] behalf" – it is acting on its *own* (Plaintiff's) behalf, by virtue of assigned

contractual rights.  *Conn. v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110,

117 (2d Cir. 2002) ("Typically, the assignee . . . replaces the assignor with respect to

the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy."). Second, the last sentence in the provision mentions an "assignment of benefits" only to rule out its use as a "valid designation." Understood in context, a so-labeled "assignment of benefits" fails to "designate someone else to act on [the member's] behalf." The Court therefore declines to say this provision unambiguously bars an assignment of the right to reimbursement. Plaintiff thus retains standing for the claim implicating this provision.

> <u>Anti-Assignment Provision #8</u>:  "Your rights and benefits under the Plan cannot be sold, transferred or pledged by you or reached by your creditors or anyone else.  Coverage may be assigned under limited circumstances and only with the written consent of Aetna."

There are 2 claims that implicate 2 ERISA plans with this anti-assignment provision or a nearly identical one.

While the first sentence clearly denies the ability to assign "rights and benefits" under the ERISA contract, which would include the right to reimbursement, the second sentence carves out certain exceptions. Those carve-outs require Aetna's written consent, which Plaintiff does not have. Where no allegations support the inference that Aetna granted consent to its members' assignments, the federal courts analyzing this provision call it a "valid and unambiguous anti-assignment" provision that deprives a purported assignee of standing. *E.g.*, *Shuriz Hishmeh, M.D., PLLC v. Aetna Health Inc.*, 2017 WL 4281449, at *1–2 (E.D.N.Y. Sept. 25, 2017); *Univ. of Wis. Hosps. v. Aetna Life Ins. Co.*, 2016 WL 305062, at *2–3 (W.D. Wis. Jan. 25, 2016).

> <u>Anti-Assignment Provision #9</u>:  "An employee cannot sell, transfer, or pledge, or assign either voluntarily or involuntarily the value of his or her benefit.  However, under certain circumstances, a court may award all or part of the employee's benefit to a present or former spouse, child or their dependent through a Qualified Medical Child Support Order."

There are 2 claims that implicate 1 ERISA plan with this anti-assignment provision.  Though no federal court has explicitly analyzed this provision, its plain language is clear, definite, and unambiguous.  Here, the "value of [the] benefit" is amount of reimbursement pursuant to the terms of the ERISA plan.  As such, the purported assignment is "ineffective" and "a legal nullity," depriving Plaintiff of standing on these claims.  *See McCulloch*, 857 F.3d at 147.

## B.    Waiver

Plaintiff argues Defendants "waived any such [anti-assignment] provision and accepted [Plaintiff's] assignment of benefits from its patients," enabling Plaintiff to retain standing.  (Pl. Opp. at 21; Compl. ¶¶ 25–27).  Aetna purportedly failed to "raise the purported non-assignment language as its reason for denying or underpaying any claims" in support.  (Pl. Opp. a 21–22; Compl. ¶¶ 25–33).

Waiver requires "a clear manifestation of an intent . . . to relinquish [a] known right."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006).  Waiver does not arise from "mere silence, oversight or thoughtlessness."  *Id.*  Waiver is intentional and voluntary.  *See id.*  Therefore, though Aetna "[n]ever once" pointed to the anti-assignment language to "deny[] or underpay[] any claim," Aetna's inaction does not constitute waiver.

Plaintiff also argues Aetna's payment "directly to [Plaintiff], over the course of several years," waives enforcement of the anti-assignment provisions. (Pl. Opp. at 21–22; Compl. ¶¶ 25–33). Courts have interpreted *McCulloch* to reject this argument. *E.g.*, *Shuriz Hishmed, M.D., PLLC*, 2017 WL 4271449, at *2 ("What is more, the Second Circuit implicitly rejected Plaintiff's argument . . . that a partial payment voids the anti-assignment provision."). In *McCulloch*, the Second Circuit held a plaintiff's "acceptance of an assignment was ineffective" due to an unambiguous anti-assignment provision. 857 F.3d at 147–48. The *McCulloch* holding came in the face of its recitation of facts, which detailed the defendants' partial payments to and communications with the plaintiff:

> Before performing the patient's surgeries, McCulloch's office staff called a number listed on the patient's Aetna insurance card to obtain information about the patient's coverage. An Aetna representative informed McCulloch's staff that the patient was covered by a health care plan administered by Aetna, that the plan provided for payment to out-of-network physicians, and that the plan covered the surgical procedures that McCulloch would be providing for the patient. The Aetna representative stated that McCulloch would be reimbursed at seventy percent of the usual, customary, and reasonable ("UCR") rate for the knee surgeries and that this rate would be based on an industry-standard schedule.
>
> . . .
>
> Relying on Aetna's promise of reimbursement, McCulloch performed the two surgeries and billed Aetna at the UCR rate for a total of $66,048. McCulloch then submitted a health insurance claim form to Aetna for each surgery . . . . Despite this provision, Aetna reimbursed McCulloch $842.51 for the first surgery and $14,425 for the second surgery, for a total of $15,267.51.

857 F.3d at 144. The partial payment (and the communications) did not factor into the Second Circuit's holding on waiver. *See id.* at 147–48. Accordingly, "in a number

of cases from [the Southern District of New York] and beyond," courts have rejected Plaintiff's waiver argument. *See Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 2019 WL 1409806, at *10–11 (S.D.N.Y. Mar. 28, 2019) (citing cases from the Third Circuit, District of New Jersey, and Southern District of New York); *e.g.*, *Farkas v. UFCW Loc. 2013 Health & Welfare Fund*, 2018 WL 5862741, at *2 (E.D.N.Y. Sept. 12, 2018).

Besides *McCulloch*, Plaintiff and Plaintiff's counsel previously made the same waiver allegations and nearly-verbatim waiver arguments in *Travelers*. *Compare Travelers*, 243 F. Supp. 3d at 330–31 (quoting the complaint: "Travelers, Empire, and Neurological . . . communicated with each other numerous times—including on [dates]—about the status of the pending claim" and Neurological "appealed the claim on or about October 30, 2013"), *with* Compl. ¶¶ 51, 63 ("Aetna and [Plaintiff] communicated with each other numerous times—including on [dates]—at which times [Plaintiff] appealed to Aetna for additional payment."). Like this Court, the *Travelers* Court did not agree with Plaintiff's position. *Travelers*, 243 F. Supp. 3d at 330–31.

That Plaintiff "routinely submitted its claims to Aetna, and that Aetna paid those claims directly to [Plaintiff], over the course of several years," (Pl. Opp. at 22), does not override the anti-assignment provisions. In the past ten years only two courts in the Second Circuit have held that a "long-standing pattern and practice of direct payment . . . suffic[es] to show [defendant's] consent to [plaintiff's] assignments," and both of those cases pre-date *McCulloch*. *Neuroaxis Neurosurgical Assocs., P.C. v. Cigna Healthcare of N.Y., Inc.*, 2012 WL 4840807, at *3 (S.D.N.Y. Oct.

4, 2012); *Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.* ("*Biomed*"), 2011 WL 803097, at *5 (S.D.N.Y. Feb. 18, 2011).

*Biomed* provides the impetus to make this argument.  *Angstadt v. Empire HealthChoice HMO, Inc.*, 2017 WL 10844692, at *5 & n.5 (E.D.N.Y. Mar. 16, 2017) (discussing the expansion of *Biomed*'s holding).  Importantly, however, *Biomed* did not hold that a long-standing pattern and practice of direct payment, without more, defeats an unambiguous anti-assignment clause.  2011 WL 803097, at *5.  Instead, *Biomed*'s holding relies on an ERISA plan that had both an anti-assignment provision and a provision that "either expressly authorize[d] patients to assign their claims to healthcare providers without [defendant's] consent, or, at the very least, create[d] an ambiguity within the contract that should be construed against the drafter." *Id.*  Only "[g]iven this ambiguity" did *Biomed* make its holding.  *Id.*  Plaintiff's other case cited in support, *Neuroaxis Neurosurgical Assocs., P.C.*, "omitted the phrase, 'given this ambiguity' [when it quoted *Biomed*] thus broadening the holding of *Biomed* without explanation." *Angstadt*, 2017 WL 10844692, at *5 n.5 (describing that *Neuroaxis Neurosurgical Assocs., P.C.* further involved an ERISA plan that "was also ambiguous regarding assignments").  In the absence of more persuasive authority, Aetna's history of payment to Plaintiff does not override the unambiguous anti-assignment provisions in the ERISA plans.  *See id.* at *5 & n.5; *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 122 (S.D.N.Y. 2016) (finding "more persuasive," after analyzing *Biomed* and *Neuroaxis Neurosurgical Assocs., P.C.*, the other "decisions that give effect to the plain language of anti-assignment provisions").

Finally, the fact that Plaintiff "did not have access to the applicable plan documents at [the] time it submitted its claims to Aetna" does not change the result. (Pl. Opp. at 21).  Even if true, Plaintiff still would not have alleged an intentional or voluntary waiver by Defendants.  *Beth Israel Med. Ctr.*, 448 F.3d at 585.  And, in the ERISA context, the Second Circuit has enforced the terms of a health plan even though a plaintiff lacked access.  *Cf. Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 134 (2d Cir. 2001) ("Davenport was required to exhaust even if she was ignorant of the proper claims procedure.").

## C.    Anti-Assignment Provisions and ERISA Preemption

Plaintiff next argues that if valid anti-assignment provisions deprive Plaintiff of standing on its ERISA causes of action, then its "corresponding state law causes of action are not preempted" by ERISA because, otherwise, Plaintiff would have no remedy.  (Pl. Opp. at 9–10).  Defendants say the Plaintiff's position "contradict[s] ERISA and controlling precedent."  (Def. Reply at 7–9).

The Second Circuit opined on this issue in *McCulloch*.  There, like here, the insurer argued an anti-assignment provision "rendered invalid [plaintiff's] attempt to enforce the purported assignment."  857 F.3d at 147.  The insurer also "argue[d]— and the district court found—that in determining whether preemption applies, [courts] should ignore that the health care plan prohibits any assignment."  *Id.*, *vacating and remanding*, 2015 WL 2183900 (S.D.N.Y. May 11, 2015).  The Second Circuit disagreed.  The ERISA preemption analysis first requires courts to "assess whether a party has standing to pursue an ERISA claim."  *Id.* at 147–48 (citing

*Montefiore*, 642 F.3d at 328 n.7).  Without a "*valid* assignment," non-enumerated parties have no standing to sue under ERISA "even if they have a direct stake in the outcome of the litigation."  *Id.* (emphasis in original) (internal quotation marks omitted) (quoting *Conn. v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002)).  To ignore a party's lack of standing "would not further the principal purpose of ERISA to protect plan beneficiaries and participants."  *Id.*  Wrote the Second Circuit:

> If we were to ignore that the health care plan prohibits an assignment to [plaintiff] in determining whether his claim is preempted, this would lead to a result that is both *unjust and anomalous*: [plaintiff] would be barred from pursuing state-law claims in state court on preemption grounds and from pursuing an ERISA claim in federal court for lack of standing.

*Id.* (emphasis added).  Otherwise, such plaintiffs would be "left without a remedy."

*Id.*

While it is true the *McCulloch* Court also analyzed that plaintiff's promissory estoppel cause of action, Defendants are incorrect to say that *McCulloch*'s "holding was not based on the anti-assignment provision in the subject health plan."  (Def. Reply at 8).  The Second Circuit expressly qualifies everything after its standing analysis by stating it "requires that [the Second Circuit] reverse the district court's ruling."  *McCulloch*, 857 F.3d at 149.  In other words, the anti-assignment and preemption analysis—preceding any holding on promissory estoppel—stands on its own and does not depend on the rest of the opinion.  *See id.*

In conclusion, Aetna did not waive the application of the valid anti-assignment provisions, which deprives Plaintiff of standing to bring ERISA causes of action on

110 claims.  In the absence of statutory standing, Plaintiff cannot remain in federal court; the state law causes of action for these 110 claims are thus remanded to New York state court.  To be clear, this Order does not address what effect, if any, these anti-assignment provisions have on any of Plaintiff's state law causes of action.

## VI.   ERISA Preemption[14]

As to the 72 surviving ERISA claims, implicating 48 plans, for which Plaintiff has alleged statutory standing, the Court now turns to ERISA preemption.  Had the ERISA causes of action for all 200 claims survived to this point, the Court parenthetically notes that the same exact analysis and outcome would apply.[15]

ERISA preempts state law causes of action because ERISA "supersede[s] any and all State laws [statutory or common law] insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 462 U.S. 85, 96–97 (1983).  ERISA preemption is "deliberately expansive," with "the only relevant state laws, or portions thereof, that survive . . . [being] those relating to plans that are themselves exempted from ERISA's scope."  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46

---

[14]   Appendix G lists all pertinent information for the claims mentioned in this Preemption Provisions section.

[15]   The parties disagree over the distinction between "complete preemption" and "express preemption," but they agree it is immaterial here.  (Def. Mem. at 10 n.5; Pl. Opp. at 10–11 ("[T]he distinction between complete preemption and express preemption has no material impact on the analysis here."); Def. Reply at 2 n.1 ("[T]he same 'related-to' analysis applies to express and complete preemption.")).

(1987) and *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 & n.20 (1981)) (internal quotation marks omitted).

State common law causes of action "relate to" an employee benefit plan if they seek "to rectify a wrongful denial of benefits under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004). State statutory causes of action "relate to" an employee benefit plan if they "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989). Therefore, state laws can "relate to" a benefit plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

## A. Application to Plaintiff's State Common Law and Statutory Causes of Action

Plaintiff's state law causes of action, even in their most favorable light, "relate to" an employee benefit plan and are preempted by ERISA. To start, Plaintiff's breach of contract allegations—breach of express contract and breach of third-party beneficiary contract—premise themselves on Aetna's failure to pay benefits according to ERISA plans. No "legal duty independent of ERISA" lies where the duty comes from an ERISA plan. *See Montefiore Med. Ctr.*, 642 F.3d at 332.

The Complaint's allegations are literally identical to those held already preempted by this Court in *Northrop Grumman*: "Through the assignment of

benefits . . . [Plaintiff] obtained the right to enforce the" health plans, which "obligated Aetna to provide reimbursement for the . . . services provided," which Defendants "breached . . . by failing to timely and properly pay [Plaintiff] for the medically necessary, covered services." *Compare* Compl. ¶¶ 2391, 2392, 2395 (breach of express contract), *and id.* ¶¶ 2428–2430, *with Northrop Grumman*, 2017 WL 389098, at *9 (quoting identical language from the complaint), *and Siemens*, 2017 WL 6397737, at *5 ("[Defendant] was obligated to reimburse [plaintiff] in full . . . for the medically necessary health care services provided."). Because Plaintiff's breach of contract causes of action seek to remedy Aetna's alleged wrongful denials of benefits according to ERISA plans, they "relate to" an ERISA plan and are preempted.

Plaintiff's breach of implied-in-fact contract, unjust enrichment, and tortious interference with contract causes of action are likewise "related to" the plans and thus preempted by ERISA. The "pre-authorization, pre-certification, or other requirements" provided to Aetna before Plaintiff rendered "medically necessary, covered health care services" do not create a legal duty independent of ERISA. (*See* Compl. ¶¶ 2401, 2410, 2418; Pl. Opp. at 25, 28 (arguing these causes of action arise from pre-authorizations and pre-certifications)). Indeed, the source of those "pre-authorization[s], pre-certification[s], or other requirements" *is* an ERISA plan. That same ERISA plan also determines what is, and what is not, a "covered" service. (Compl. ¶ 29 ("[T]hese health care services were covered services under the applicable health plan documents.")). Plaintiff's dispute involves obligations derived from ERISA plans themselves; they are thus not independent of ERISA. *See Pilot Life Ins.*

*Co.*, 481 U.S. at 43 (finding a tortious breach of a contract cause of action, arising from an alleged failure to provide benefits, preempted by ERISA); *Montefiore Med. Ctr.*, 642 F.3d at 331–32 ("None of [the contract or unjust enrichment causes of action] appear to be [causes of action] . . . where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the Plan."); *Siemens*, 2017 WL 6397737, at *5 ("Courts have expressly rejected [Plaintiff's] argument" and collecting cases where ERISA preempted, *inter alia*, implied-in-fact contract and unjust enrichment causes of action); *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016) (holding tortious interference with contract cause of action preempted by ERISA).

The state statutory Prompt Payment Law cause of action is also preempted by ERISA.  Under New York Insurance Law § 3224-a, providers must make prompt payment unless their obligation "is not reasonably clear due to a good faith dispute regarding the eligibility of a person for coverage, . . . the amount of the claim, [or] the benefits covered under a contract or agreement." N.Y. Ins. Law § 3224-a(b).  That is, this cause of action grounds itself in the rights and obligations expressed in—and therefore "refers to"—an ERISA plan.  Case law is replete with examples of courts holding that ERISA preempts such causes of action. *E.g.*, *Siemens*, 2017 WL 6397737, at *5–6 ("The [Prompt Payment Law cause of action] itself, in effect, seeks to recover for monies owed pursuant to the [ERISA] Plan.  Therefore, . . . [it] relates to their ERISA claims and merely seeks an alternative cause of action for those claims."); *Northrup Grumman*, 2017 WL 389098, at *10 ("At least two sister courts within the

Second Circuit have ruled that a plaintiff's attempt to circumvent ERISA by stating a [cause of action] under New York's Prompt Payment Law are preempted by ERISA."); *Beth Israel Med. Ctr. v. Goodman*, 2013 WL 1248622, at *4 (S.D.N.Y. Mar. 26, 2013) (holding that Prompt Payment Law cause of action "incorporates the coverage and eligibility limitations" of the ERISA plan and is thus preempted"); *Weisenthal v. United Health Care Ins. Co.*, 2007 WL 4292039, at *7 (S.D.N.Y. Nov. 29, 2007) ("[A]ny resolution of what constitutes a benefit disputed in good faith necessarily derives entirely from the particular rights and obligations established by the benefit plans. Thus, Plaintiffs' Prompt Payment Law [causes of action] are . . . pre-empted with respect to the ERISA-governed plans" (internal quotation marks and citations omitted)); *Berry v. MVP Health Plan, Inc.*, 2006 WL 4401478, at *5 (N.D.N.Y. Sept. 30, 2006) ("[P]laintiffs are attempting to utilize N.Y. Ins. Law to vindicate their rights under the relevant MVP ERISA-governed plans.  Although plaintiffs cite New York statutory law in the complaint, the factual allegations reveal the true motive of this action, to wit, to recover benefits for medical services to which, plaintiffs, as assignees, believe they are entitled under the terms of the plans.").

In sum, ERISA preempts Plaintiff's state law causes of action because, even in their most favorable light, they "relate to" an employee benefit plan.

### B.   "Amount of Payment" or "Right to Payment"

Plaintiff first contests preemption by construing its case as involving the "amount of payment," which—unlike one involving the "right to payment"—is not subject to ERISA preemption.  (Pl. Opp. at 6–8).  "[A]mount of payment" claims

concern "the computation of contract payments or the correct execution of such payments . . . [and] are typically construed as independent" of ERISA. *Montefiore Med. Ctr.*, 642 F.3d at 331–31. In "amount of payment" claims, "the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the" ERISA plan. *Id.* "Right to payment" claims "implicate coverage and benefits established by the terms of the ERISA benefit plan" and are construed as "claims for benefits that can be brought pursuant to" ERISA. *Id.*

Plaintiff contends Aetna's partial payment of "approximately 160 of the 200 claims at issue" establishes Aetna's recognition of Plaintiff's right to payment and thus means the Court need only to examine "other documents, such as out-of-network fee schedules and provider billing data" to assess the amount due. (Pl. Opp. at 8, 11–12). Plaintiff recites the law as: "A provider has no ERISA cause of action where, as here, the requested relief rests on information or documents that are outside the actual ERISA plan." *Id.* (emphasis removed) (citing *Long Island Thoracic Surgery, P.C. v. Building Serv. 32BJ Health Fund*, 2019 WL 7598669 (E.D.N.Y. Sept. 3, 2019), *report and recommendation adopted*, 2019 WL 5060495 (E.D.N.Y. Oct. 9, 2019), and *Garber v. United Healthcare Corp.*, 2016 WL 1734089 (E.D.N.Y. May 2, 2016)).

Yet even construing the allegations in its favor, as required, Plaintiff simply "seek[s] enforcement of specific provisions of the" ERISA health plans, which revolves around a "right to payment." *See Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299–300 (2d Cir. 2012). The defined terms in the ERISA health plans, like "medically

necessary, covered health care services," determine what, if any, benefit Plaintiff is owed. *See* Compl. ¶¶ 28–29; *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 466 (E.D.N.Y. 2014) ("[T]he complaint refers directly to [an ERISA] Plan term in alleging that plaintiff was entitled to payment for the services . . . because they were 'medically necessary'—a standard imposed by the Plan."); *Neuroaxis Neurosurgical Assocs., P.C.*, 2012 WL 4840807, at *4 ("'Medical necessity' is defined by the plan. To resolve this claim of underpayment, the Court must look to the plan to determine . . . what is 'medical necessity' . . . . This is a classic 'right to payment'—not 'amount of payment'—determination."); *see also Lone Star OB/GYN Assoc. v. Aetna Health Inc.*, 579 F.3d 525, 530–31 (5th Cir. 2009) ("[A]ny determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service'—does fall within ERISA."). The ERISA plan terms provide "more than a mere benchmarking for calculating damages" – they *are* "the basis for the claimed benefits." *Arditi*, 676 F.3d at 299–300.

The *Enigma Management Corp. v. Multiplan, Inc.* Court analyzed Plaintiff's argument and described it as "mischaracteriz[ing] the dispute." 994 F. Supp. 2d 290, 300–01 (E.D.N.Y. Jan. 27, 2014). The *Enigma* Court explained:

> In a literal sense the parties disagree on the *amount* that [defendant] is required to pay on [plaintiff's] claims, but they only disagree because [defendant] asserts that [plaintiff] does not have the *right* to full payment under the terms of the ERISA plan.

*Id.* (emphasis in original). The case law reflects a "narrow" interpretation of "amount of payment," which would not include Plaintiff's case here. *See id.* Plaintiff does not

contest "the applicable rate for [Plaintiff's] services, the timing of [Aetna's] payment to [Plaintiff], or the mechanism for paying the claim." *See id.*

Therefore, Aetna's partial payment does not immunize Plaintiff's claims from ERISA preemption. *E.g.*, *Salzberg v. Aetna Ins. Co.*, 2018 WL 1275776, at *1, 3 (S.D.N.Y. Mar. 12, 2018) ("Plaintiff billed $78,674.00 for the surgery, and defendants paid $12,936.87. . . . [P]laintiff's claims implicate coverage and benefit determinations as set forth by the terms of the ERISA benefit plan" (internal quotation marks omitted)); *Plastic Surgery Grp., P.C.*, 64 F. Supp. 3d at 465–68 (holding that, even though defendants paid on one claim, plaintiff's "claims do not relate solely to the amount of payment, but instead to the right to payment under" an" ERISA plan). Plaintiff brings "right to payment" claims.

The cases on which Plaintiff relies, *Long Island Thoracic* and *Garber*, bore on different, more-nuanced theories of liability. Neither involved an insurer's "fail[ure] to pay the percentage of the UCR specified in any of the assigned member plans, or breach [of] any other terms of those plans." 2019 WL 7598669, at *14; 2016 WL 1734089, at *5.[16] Instead, their disputes centered on the defendants' "reliance on the Fair Health Organization's rates [as] an incorrect and artificially low reference point," which "turns on the methodology that Fair Health, Inc. (which [p]laintiffs did not sue) utilized to arrive at" the rate paid. 2019 WL 7598669, at *14; 2016 WL 1734089, at *5. That "determination does not depend upon the terms of any ERISA-

---

[16]     The Court notes that the quoted paragraphs in *Long Island Thoracic* and *Garber* are nearly identical.

governed insurance agreements." 2019 WL 7598669, at *14; 2016 WL 1734089, at *5.

But here, Plaintiff squarely challenges Aetna's failure to pay the reimbursement specified in the ERISA plans as a breach of those plans. *E.g.,* Compl. ¶¶ 33–34 ("[Plaintiff] agreed to provide covered health care services . . . in exchange for Aetna paying [Plaintiff] . . . *at the rates and levels set forth under the applicable health plan documents.*" (emphasis added)). Plaintiff does not dispute any plan-provided "methodology" or Aetna's reliance thereon. *E.g.,* Compl. ¶ 101 ("Aetna would have been obligated by its plan documents to pay . . . the 85th percentile rates established by FairHealth"). For every single one of the 200 claims, Plaintiff pleads:

> the plan documents governing the amount [Plaintiff] was to receive for services rendered to this patient require Aetna to pay [reimbursement methodology], which Aetna failed to do. . . . Aetna has failed . . . to honor its obligations regarding claim reimbursement, despite, upon information and belief, *plan provisions dictating to Aetna the amounts that should have been paid* on this claim . . .

Compl. ¶¶ 44–2365 (emphasis added). Such pleadings reflect "right to payment" claims. *Arditi*, 676 F.3d at 299–300 ("[The] actual claims asserted seek enforcement of specific provisions of the [p]lan, implicate coverage and benefits established by the terms of the ERISA benefit plan, and can be construed as colorable claim[s] for benefits pursuant to" ERISA (ellipses and internal quotation marks removed)).

Therefore, ERISA preempts the state law causes of action for the 72 remaining claims.

## VII.   ERISA Exhaustion of Administrative Remedies[17]

Because the remaining 72 claims present only ERISA causes of action, the next step in the analysis is to apply "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Constr.*, 788 F.2d 76, 79 (2d Cir. 1986).

"ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006).   Courts require that plaintiffs exhaust only "those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d. Cir. 1993).   The failure to exhaust administrative remedies before filing an action in federal court requires ERISA cause of action to be dismissed.   *Alfarone*, 788 F.2d at 79; *see also Leak v. CIGNA Healthcare*, 423 Fed. App'x 53, 53–54 (2d Cir. 2011); *Griefenberger v. Hartford Life Ins. Co.*, 131 Fed. App'x 756, 758–59 (2d Cir. 2005).   The ERISA exhaustion requirement is not "an insignificant procedural hurdle."   *Northrup Grumman*, 2017 WL 389098, at *6 (quoting *Am. Med. Ass'n v. United HealthCare Corp.*, 2007 WL 1771498, at *5 (S.D.N.Y. June 18, 2007)).

Second Circuit precedent requires Plaintiff to have exhausted pursuant to the terms in the 48 health plans implicated by the 72 remaining ERISA claims.   *See*

---

[17]   Appendix G lists all pertinent information for the claims mentioned in this ERISA Exhaustion section.

*Kennedy*, 989 F.2d at 594.   Plaintiff never specifies whether or not it has done so. Instead, Plaintiff sets forth the same general allegations for each claim.

At the outset of the Complaint, Plaintiff references its attempts "to enter into a meaningful dialog" with Defendants that have "fallen on deaf ears." (Compl. ¶¶ 40– 41).   Plaintiff says "[a]ll that effort" sufficed to "exhaust[] all reasonable administrative remedies and appeals – to the point were further administrative actions and appeals would be futile." (Compl. ¶ 42).   Then, for each specific claim, Plaintiff repeats the same allegation 200-times:

> Aetna and [Plaintiff] communicated with each other numerous times – including on [dates] – at which times [Plaintiff] appealed to Aetna for additional payment. . . .  [Plaintiff's] repeated attempts to communicate with Aetna about the status of this claim for health care services provided to [patient] – including those documented above – have fallen on deaf ears, . . . despite, upon information and belief, plan provisions dictating to Aetna . . . the timing of the payment to [Plaintiff] and response to any appeals, among other plan provisions.

*E.g.*, *id.* ¶¶ 51, 55.   Where Plaintiff made "additional, written appeals," Plaintiff states:

> On [date], [Plaintiff] filed an additional, written appeal with Aetna, seeking further reimbursement on this claim.  That appeal was [denied or ignored].

*E.g.*, *id.* ¶¶ 66, 78.   Spelling out its first ERISA cause of action, Plaintiff writes:

> [Plaintiff] has exhausted all available administrative remedies or appeal rights . . . .  Specifically, all appeals and other administrative remedies have either been denied or have been outstanding for such a long time that the only reasonable conclusion that can be drawn is that they have been ignored and are deemed denied.

*E.g.*, *id.* ¶¶ 2381–83.

These allegations sound familiar because they are, quite literally, the exact same allegations quoted and dismissed in *Northrup Grumman*.  2017 WL 389098, at *6 (quoting complaint paragraphs 101–03).  Just as they were in *Northrup Grumman*, these are mere conclusory statements without any plausible factual allegations in support.  *Id.* at *7.  Plaintiff cannot satisfy its pleading burden by simply arguing "it administratively appealed each of the 200 claims at issue with Aetna."  (Pl. Opp. at 14).  "It is well established that ERISA complaints containing bald assertions that administrative remedies have been exhausted do not withstand a 12(b)(6) motion." *Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 609 (S.D.N.Y. 2009) (citing cases).

The alleged appeals, made during the parties' "communications," are devoid of context and content.  *Id.*  Plaintiff never once alleges that any initial claim was denied – viz., the prerequisite to any appeal.  (*See* Compl. ¶¶ 44–2365).  By the same token, there is no known date on which Aetna denied any claim, precluding any determination that an appeal was timely taken under a plan.  This is not the first time Plaintiff and Plaintiff counsel engaged in this exact "artful pleading."  *Siemens*, 2017 WL 6397737, at *8 ("[I]t appears that the [same Plaintiff and Plaintiff's counsel as here] have engaged in artful pleading in failing to state when their claim was denied by the Defendant . . . .").

Even assuming Aetna denied the claims on one of the dates of correspondence—or through non-payment or minimal reimbursement—nothing suggests that Plaintiff appealed pursuant to the procedure set out in each ERISA

plan.  The Complaint lacks a basis to reasonably infer what each ERISA plan's appeals procedure required, whether Plaintiff followed that procedure, when the appeal was taken, and when the appeal was decided.  (*See* Compl. ¶¶ 44–2365).  Nor is it Plaintiff's explicit position that its "additional, written appeals" complied with the ERISA plan terms.  (*See* Pl. Opp. at 17–18).  These allegations say no more about the provisions of the ERISA plan than any others.  (Compl. ¶¶ 44–2365).  Plus, there are only 89 instances of such "additional, written appeals," *i.e.*, not every claim had such an additional appeal.  (Compl. ¶¶ 44–2365; *see* Appendix A).  And, to insist these complied with the ERISA plan appeals process would contradict their "additional" label, which presupposes earlier "appeals."  (*See* Pl. Opp. at 16 ("For several claims, [Plaintiff] states that it submitted a *second* written appeal" (emphasis added))).

Despite the absence of the fundamental details, Plaintiff states "all appeals and other administrative remedies have either been denied or have been outstanding for such a long time that the only reasonable conclusion that can be drawn is that they have been ignored and are deemed denied."  (Compl. ¶ 2382).  Yet an allegation "that all conditions precedent *including the exhaustion of administrative remedies* to maintaining this action have been performed or have occurred . . . is insufficient." *Kesselman*, 668 F. Supp. 2d at 609 (emphasis added) (internal quotation marks and citation omitted).

Plaintiff invokes a similar theory of exhaustion to the one dismissed in *Antell v. United Healthcare Ins. Co. of N.Y.*, 2012 WL 13042822, at *2 (S.D.N.Y. Mar. 16, 2012).  Though the *Antell* plaintiff "did not follow the formal process for exhausting"

the claims as laid out in the ERISA plan, she pointed to her "correspondence" and "numerous telephone conversations" with the insurer, including her submission of "numerous additional documents," in satisfaction thereof. *Id.* (internal quotation marks omitted). The *Antell* Court was not persuaded: "The law, however, *is clear* that correspondence such as that between [plaintiff] and [her insurer] is insufficient to meet the clearly delineated process set forth within" the ERISA plan. *Id.* (emphasis added); *see Egan v. Marsh & McLennan Cos., Inc.*, 2008 WL 245511, at *10 (S.D.N.Y. Jan. 29, 2008) ("Plaintiff contends that his communications with [defendants] should be considered sufficient exhaustion of remedies. . . . This argument fails."). It is insufficient here too – a cursory review of plans' appeals procedures reflects Plaintiff's non-compliance. *E.g.*, Ex. 1 at 77–85 [DE 21-5]; Ex. 2 at B-71 to B-77 [DE 21-6].

Plaintiff misplaces reliance on *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98 (2d Cir. 2005) and *Ritzer v. Nat'l Org. of Indus. Trade Unions Ins. Tr. Fund Hosp., Med., Surgical Health Benefit*, 807 F. Supp. 257 (E.D.N.Y. 1992). The *Nichols* plaintiff clearly pleaded the key dates (her claim, the insurer's denial, her appeal, etc.) as well as the appeals procedure followed. 406 F.3d at 105–06. *Ritzer* is a summary judgment decision that likewise relies the particular dates and details of the plaintiff's claim and appeal. 807 F. Supp. at 260.

Plaintiff has thus failed to plead exhaustion of the administrative remedies set out in the 48 ERISA plans applicable to the 72 claims.

## A.     Exhaustion as an Affirmative Defense

Plaintiff correctly notes that exhaustion is an affirmative defense and the Defense's "burden to prove." (Pl. Opp. at 14–15). But Plaintiff incorrectly asserts that, therefore, "an ERISA plaintiff is not even required to plead that it exhausted its administrative remedies." (*Id.*) "[E]stablishing exhaustion is generally considered a prerequisite to pursuing an ERISA action." *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292 (E.D.N.Y. 2014). "Accordingly, plaintiffs were required to plead exhaustion of administrative remedies under the [ERISA] plan." *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 538 (E.D.N.Y. 2011); *Kesselman*, 6 F. Supp. 2d at 608 ("[Defendants] argue that [plaintiff] has not stated a viable claim for relief against them because she has not sufficiently pled exhaustion of administrative remedies, a prerequisite to bringing an ERISA action. The Court agrees.").

Plaintiff bases its position on *Paese v. Hartford Life & Accident Ins. Co.*, where the Second Circuit held the failure to exhaust was "not jurisdictional but is an affirmative defense." 449 F.3d 435, 446 (2d Cir. 2006). *Paese*'s holding is not a license to avoid pleading anything concerning the exhaustion of administrative remedies. "[I]n cases following *Paese*, courts in [the Second] Circuit have explicitly noted that '*Paese* does not remove the requirement that the plaintiff exhaust his administrative remedies.'" *Kesselman*, 668 F. Supp. 2d at 608 (quoting *Egan*, 2008 WL 245511, at *10); *Novella*, 2007 WL 2417303, at *3 (same).

The Second Circuit has held that "an affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F. 3d. 67, 74 (2d Cir. 1988); *Leak*, 423 Fed. App'x at 53–54. The failure of exhaust appears on the face of a complaint where, for example, plaintiff "explicitly admit[s] a conscious decision not to exhaust," *Leak*, 423 Fed. App'x at 54, or plaintiff "pleads no facts suggesting any effort to exhaust the remedies *available through his ERISA administrative plan*," *Abe v. N.Y.U.*, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (emphasis added).

Courts within the Second Circuit "routinely dismiss ERISA claims . . . on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe*, 2016 WL 1275661, at *5. Hence a long line of post-*Paese* cases doing so. *E.g.*, *Diamond v. Loc. 807 Loc. Mgmt. Pension Fund*, 595 Fed. App'x 22, 25–26 (2d. Cir. 2014); *McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 154–55 (S.D.N.Y. 2017) (citing cases); *Northrup Grumman*, 2017 WL 389098, at *5–8; *Mayer v. Joint Indus. Bd. of Elec. Indus.*, 2015 WL 9581821, at *4–5 (E.D.N.Y. 2015); *Star Multi Care Servs., Inc.*, 6 F. Supp. 3d at 292–93; *DeSilva*, 770 F. Supp. 2d at 536–39; *Morillo v. 1199 SEIU Benefit & Pension Funds*, 783 F. Supp. 2d 487, 489 n.3 (S.D.N.Y. 2011); *Kesselman*, 668 F. Supp. 2d at 608–09; *Egan*, 2008 WL 245511, at *10; *Novella v. Empire State Carpenters Pension Fund*, 2007 WL 2417303, at*3–5. (S.D.N.Y. Aug. 28, 2007).

Plaintiff cites to *Rozek v. N.Y. Blood Ctr.*, which says "a plaintiff is not required to plead exhaustion of administrative remedies." 925 F. Supp. 2d 315, 342–43

(E.D.N.Y. 2013).  The quote's face value supports Plaintiff's position, but its context re-harmonizes it with precedent.  *Rozek* was not analyzing a motion to dismiss – it concerned summary judgment and a motion *in limine* to preclude evidence.  *Id.* at 318.  Because the *Rozek* defendants' "Answer d[id] not assert failure to exhaust administrative remedies as an affirmative defense," the *Rozek* court had to determine whether the defendants could nevertheless raise it on summary judgment.  *Id.* at 342–43.  On the exhaustion issue, *Rozek*'s quote merely affirms the ordinary requirement that defendants, not plaintiffs, plead affirmative defenses.

In sum, Plaintiff's exhaustion-as-an-affirmative-defense argument is not persuasive.  Plaintiff's sole remaining recourse is futility.

### B.    Futility

Plaintiff alternatively argues that the Complaint makes a "clear and positive showing of the futility of . . . an appeal," which excuses it from ERISA's exhaustion requirement.  *Kennedy*, 989 F.2d at 594.  The Complaint alleges far less than a "clear and positive showing," however.  Indeed, the futility exception "is not applied lightly." *Northrup Grumman*, 2017 WL 389098, at *6 (emphasis removed) (quoting *Zupa v. Gen. Elec. Co.*, 2016 WL 3976544, at *2 (D. Conn. July 22, 2016)); *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, 2011 WL 1213218, at *6 (S.D.N.Y. Mar. 29, 2018) ("The standard for demonstrating futility is very high, and Plaintiffs seeking to make such a showing face a heavy burden" (internal quotation marks and citations omitted)).

Plaintiff's futility allegations are conclusory statements unsupported by plausible factual allegations, just as they were in *Northrup Grumman*. The essence of Plaintiff's futility contention is that "so many unsuccessful attempts have been made by [Plaintiff] . . . [such that] that the only conclusion that can be drawn is that further administrative proceedings would be futile." (Compl. ¶ 2383). As already underscored, this allegation—verbatim—was held insufficient in *Northrup Grumman*, 2017 WL 389098, at *6 (quoting that complaint's paragraph 103).

Plaintiff's "characterization of [its] communications falling on deaf ears does not recast [Aetna's] nonpayment [or underpayment] into 'a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile.'" *Northrup Grumman*, 2017 WL 389098, at *7 (quoting *Davenport*, 249 F.3d at 133); *see* Compl. ¶¶ 40–41; Pl. Opp. at 18. In *Davenport*, for example, informal letter correspondence "did not render futile further pursuit of [the plaintiff's] claims through the proper channels." *Davenport*, 249 F.3d at 133–34 (citing *Bourgeois v. Pension Plan*, 215 F.3d 475, 480 n.14 (5th Cir. 2000)). Holding otherwise would make "the courts and not ERISA trustees . . . primarily responsible for deciding claims for benefits." *Barnett v. IBM Corp.*, 885 F. Supp. 581, 588 (S.D.N.Y.1995); *see Bourgeois*, 215 F.3d at 480 n.14 ("[A]llowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement.").

Even if "a plaintiff makes a clear and positive showing of futility where . . . the defendant ignores the plaintiff's appeals," the point operates without force here. (*See*

Pl. Opp. at 17–18 (citing *Siemens*, 2017 WL 6397737, at *9 and *Sibley-Schreiber v. Oxford Health Plans (N.Y.), Inc.*, 62 F. Supp. 2d 979 (E.D.N.Y. 1999))).  Plaintiff has not "appeal[ed]" as that term is used in ERISA precedent – *i.e.*, pursuant to the ERISA plan provisions.   *Davenport*, 249 F.2d at 133–34 (holding informal correspondence "did not render futile further pursuit of her claims *through the proper channels*" (emphasis added)); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) ("Leonelli made no attempt, as required, to exhaust the administrative remedies *provided for under the plan*" (emphasis added)).  Because plaintiffs must exhaust all administrative remedies—to wit, appeals—outlined in ERISA plans, regardless of their awareness of such remedies before bringing suit, informal substitutes for the formal appeals process does not trigger the futility exception.  *Id.* Thus "attempts to enter into a meaningful dialog," absent more, are of no import here.

Sibley-Schreiber, on which Plaintiff relies, is inapposite.  (Pl. Opp. at 17).  The *Sibley-Schreiber* plaintiffs challenged "a company-wide promulgation of limited or no coverage unrelated to the personal circumstances of individual claimants."  62 F. Supp. 2d at 986–89 (questioning whether courts should apply exhaustion requirement to cases challenging "across the board company-wide coverage policies").  Plaintiff here challenges no "uniform and generally applicable" policy.  Each of Plaintiff's claims relates to the Aetna member's health plan and its terms – not to mention each member's individual circumstances, like how much of his or her deductible has been paid.  (*E.g.*, Compl. ¶¶ 257, 698, 1361, 2097).

Therefore, Plaintiff has not plausibly alleged futility and thus has not excused its failure to exhaust the administrative remedies for the 72 ERISA claims.

## VIII.  Leave to Amend

Plaintiff is denied leave to amend.  "Although leave to amend should be freely given 'when justice so requires,' it is 'within the sound discretion of the district court to grant or deny leave to amend.'"  *Lopez v. Stop & Shop Supermkt. Co. LLC*, 2020 WL 4194897, at *2 (S.D.N.Y. July 21, 2020) (quoting Fed. R. Civ. P. 15(a)(2) and *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  Though Plaintiff suggests it can "cure any pleading deficiencies," its Opposition brief does not suggest the withholding of any curative facts.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see* Pl. Opp.  Indeed, the operative Complaint repeats identically-worded allegations dismissed in previous cases brought by Plaintiff and Plaintiff's counsel.  *E.g.*, *Siemens*, 2017 WL 6397737, at *5 ("[T]he [same] Plaintiffs have engaged in artful pleading" when they filed an identical complaint); *Travelers*, 243 F. Supp. 3d at 330–31; *Northrup Grumman*, 2017 WL 389098, at *6; *cf. Lopez*, 2020 WL 4194897, at *2 (denying leave to replead where plaintiff was "represented by the same counsel and filed nearly verbatim copies of the complaints" in other cases).  Plaintiff's request is denied, therefore, as "it appears that granting leave to amend is unlikely to be productive."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129 (2d. Cir. 1993).

That said, however, the 72 dismissed ERISA claims are dismissed without prejudice to refile upon exhaustion of administrative remedies pursuant to the terms of the ERISA plans.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is DENIED in part and GRANTED in part and.  *See* Appendix A for the full claim-by-claim breakdown.

Defendants motion is DENIED with respect to the 4 inconclusive claims.  *See* Appendix H (listing the 4 claims).  The parties are ORDERED TO SHOW CAUSE, via a joint letter no longer than three pages, filed within 45 days from the date of this Order, as to whether these 4 claims implicate health plans governed by ERISA.  The parties are further directed to attach the full health plans, if the plans can be identified.

Defendants motion is GRANTED to the extent that the 12 non-ERISA claims, the 2 unassigned claims, and the 110 claims implicating valid anti-assignment clauses bring ERISA causes of action because Plaintiff lacks statutory standing. Defendants motion is DENIED as to these claims' state law causes of action, all of which are REMANDED to state court because the Court declines to exercise supplemental jurisdiction.  *See* Appendix I (listing the 124 claims).

Defendants' motion is GRANTED in full as to the remaining 72 claims, due to the failure to exhaust administrative appeals and because their state law causes of action are preempted by ERISA.  *See* Appendix J (listing the 72 claims).  The ERISA causes of action for these claims are dismissed without prejudice to refile upon exhaustion of administrative remedies pursuant to the terms of the ERISA plans; the state law causes of action for these claims are dismissed with prejudice.

**SO ORDERED.**

Dated: Central Islip, New York         s/ Denis R. Hurley
       January 4, 2021                Denis R. Hurley
                                        United States District Judge